**In re Thomas G. SCHONGALLA, Darlene R. Schongalla.**

**Bankruptcy No. 79–11950.**

United States Bankruptcy Court, D. Maryland.

June 2, 1980.

---

**2.** See debtors' motion Par. 4.

**3.** Reform Act, Title IV, § 405(d).

Lawrence D. Coppel, Baltimore, Md., for debtor.

Edward C. Dolan, Greenbelt, Md., for Suburban Trust.

FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON SUBURBAN TRUST COMPANY'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

GLENN J. GOLDBURN, Bankruptcy Judge.

### FINDINGS OF FACT

On November 28, 1979, the above named debtors filed a joint petition and plan pursuant to Chapter 13 of the Bankruptcy Code. The plan contains six classes of claims:

Class 1: The holder of the first and second mortgage liens on the debtors' residence;

Class 2: The claim of another lienholder to the extent such claim is secured by a lien on the debtors' residence, a lien which the debtors contest;

Class 3: The claim of the holder of a security interest on the debtors' automobile;

Class 4: The claim of a bank for an education loan;

Class 5: The claims of unsecured priority creditors;

Class 6: The claims of all other unsecured creditors including the Class 2 creditor if it is determined that its lien is invalid.

The plan further provides that payments to the creditors in Classes 1 through 5 shall be paid directly by the debtors in accordance with agreements entered into between the debtors and those creditors. This provision has not been challenged by the Chapter 13 Trustee or the creditors and the Court therefore finds it unnecessary to rule upon its propriety.

The Class 2 creditor has objected to the plan based upon uncertainty, best interest of the creditors and good faith. The Court concludes that only the latter objections need be addressed at this time.

The good faith objection is grounded upon the fact that the debtors propose to pay twelve monthly installments of twenty-five dollars ($25.00), which shall be distributed pro rata to unsecured creditors whose claims aggregate over twenty thousand dollars ($20,000.00). Other pertinent facts include that the debtors have separately classified the unsecured educational loan and propose to pay that creditor in full (Class 4) and that the husband-debtor filed a petition under the Bankruptcy Act and was discharged from his debts, pursuant to that Act, in 1974. Further, the debtors' Chapter XIII statement contains a computation of their projected budget, which provides four hundred ($400.00) per month for food for two adults with no dependents; forty dollars ($40.00) per month for newspapers, periodicals and books, sixty dollars ($60.00) per month for recreation, and thirty-three ($33.00) per month for club and union dues.

The statement reveals that the debtors' projected income will exceed their projected expenses by one hundred fifty-five dollars ($155.00) per month. The husband-debtor testified that he is presently employed and that he expects to graduate from law school in July of 1982. The Chapter 13 Trustee recommended confirmation of the plan.

## CONCLUSIONS OF LAW

The questions presented include whether a plan which proposes one hundred percent payment to one class of unsecured creditors and 1.44 percent to the other class of unsecured creditors is discriminatory and not proposed in good faith. The Court is cognizant of the split in judicial opinion concerning the good faith requirement of Section 1325(a)(3), and agrees with Bankruptcy Judge DeGunther in the Northern District of Illinois who stated that due to the absence of an objective Congressional definition of good faith, "Needless to say, there will be sharply contrasting approaches and results among some [two hundred] Bankruptcy Judges in this country." *In the Matter of Robert L. and Sandra K. Marlow*, 3 B.R. 305, 308, 6 Bankr.Ct.Dec. 77, 78 (N.D. Ill., March 27, 1980). These approaches have included that of "reading in" a requirement that at least seventy percent of allowed unsecured claims must be paid, *In re Paul E. Burrell*, 2 B.R. 650, 5 Bankr.Ct. Dec. 1321 (N.D.Cal.1980); confirmation of a plan proposing fifty percent payment of the unsecured claims although an objection was filed claiming that such payment did not constitute the debtors' best efforts, *In re James G. and Pamela R. Powell*, 2 B.R. 314, 5 Bankr.Ct.Dec. 1233 (E.D.Va.1980); confirmation of a plan despite one percent payments to unsecured creditors and striking that provision from the confirmed plan because one percent payments are de minimis and insulting, *In re Jerry W. and Deborah L. Webb*, 3 B.R. 61, 5 Bankr.Ct.Dec. 1379 (N.D.Cal. Feb. 21, 1980); and denying confirmation of a one percent payment plan by finding that such payment to unsecured creditors is the equivalent of liquidation and therefore abuses the purposes of Chapter 13, *In re Linda Beaver*, 2 B.R. 337, 5 Bankr.Ct.Dec. 1285 (S.D.Cal.1980).

The probable reasons for this split of opinion are that Section 1325(a)(4) requires merely that payments to unsecured creditors under the plan amount to not less than what those creditors would receive if the case had been filed under Chapter 7, and the absence of a definition of the Section 1325(a)(3) good faith requirement. The result has been that debtors who would have no assets for distribution to unsecured creditors under Chapter 7 have filed under Chapter 13 and proposed either no payment or de minimis payments to classes of unsecured creditors. *See, e. g., In re Richard F. Iacovoni, et al.*, 2 B.R. 256, 5 Bankr.Ct.Dec. 1270 (D.Utah 1980). The literal language of Section 1325(a)(4) allows confirmation of such plans. *In re Webb, supra; In re Stuart R. and Sheila M. Terry*, 3 B.R. 63, 5 Bankr.Ct.Dec. 1397 (W.D.Ark. Feb. 22, 1980).

This Court, however, is persuaded that the good faith requirement of Section 1325(a)(3) should be interpreted as meaning that such plans cannot be confirmed without an inquiry into all of the circumstances involved in each individual case. This inquiry is mandated by the spirit of Chapter 13 as evidenced by its legislative history and the application and interaction of particular provisions of the Bankruptcy Code. For example, Section 727(a)(9) allows a discharge to be granted to a debtor in a Chapter 7 case within six years after a Chapter 13 discharge only if one hundred percent of the allowed unsecured claims were paid under the plan, or at least seventy percent of such claims were paid and the plan was proposed in good faith and was the debtor's best effort. This discharge provision is obviously an incentive for high repayment plans. The fact that a "best effort" provision is not an express requirement for conformation, an indication that such effort is not mandated, is not controlling because "effort is also important to a determination of 'good faith'." *In re Iacovoni, supra*, 2 B.R. at 267, 5 Bankr.Ct.Dec. at 1277 n. 4 and legislative history cited therein.

Further, the Court is persuaded that plans proposing minimal payments to unsecured creditors in satisfaction of Section 1325(a)(4) must be strictly scrutinized for good faith because of the discharge provisions which Chapter 13 relief affords. As Bankruptcy Judge Katz stated *In re George S. and Peangkaeo Howard,* "A review of the legislative history of Chapter 13 leads to the conclusion that the drafters did not intend the liberal provisions of Chapter 13 to be used as a disguised Chapter 7 Liquidation. The drafters intended debtors to deal fairly and justly with their creditors. As a reward for such dealings, debtors were given the 'super' discharge provided for in Section 1328(a) by which all debts, except alimony and child support obligations (Section 523(a)(5)) and certain long term debts (Section 1322(b)(5)), are discharged upon successful completion of the plan." 3 B.R. 75, 76, 5 Bankr.Ct.Dec. 1375, 1376 (S.D.Cal. 1980). In addition to the "super" discharge, Chapter 13 debtors may take advantage of sections such as 522(f) and 1322(b)(2) to modify and avoid certain liens. The result is not only a "super discharge" but an "extra fresh start".

Additionally, the Chapter 13 Trustee's administrative duties which seem particularly burdensome in a case which proposes minimal payments, must be considered. The Trustee must prepare such cases, attend the Section 341 and confirmation hearings, make the computations required by Section 1325(a)(4), and make recommendations to the Court and disbursements to the creditors. In order to justify such efforts, the Court must determine that a debtor who proposes miniscule monthly payments to unsecured creditors does so in the utmost good faith.

■ This determination is by necessity to be made on a case by case basis, and it is conceivable that a Court could find that, in a given case, payments of one percent were proposed in good faith. Inquiry should not be structured by a computerized or standard definition of "best effort", but rather should focus on the reasonableness of the debtor's effort to deal fairly with his creditors. Factors which may be considered in this reasonable effort test should include: the percentage of proposed payments to unsecured creditors; the period of time payments will be made under the proposed plan; the debtor's employment history and future prospects; the amount of unsecured claims and the nature thereof; whether the debtor has filed for bankruptcy in the past and the type of debts sought to be discharged, i. e., whether the debtor is specifically invoking the privilege of the liberal Chapter 13 discharge provisions. By undertaking this case by case inquiry into good faith and reasonableness of the debtor's proposed plan, the Court can ensure that the increased availability of Chapter 13 relief intended by Congress will not be abused.

■ Turning to the instant facts, the Court finds that the debtors' proposal to pay twenty-five dollars ($25.00) each month for twelve months in settlement of over twenty thousand dollars ($20,000.00) in unsecured claims is unreasonable. The record shows an excess of one hundred fifty-five dollars ($155.00) per month in the debtors' budget. Both the husband and wife are employed, and the husband anticipates a career in the legal profession to begin within two years. The husband has filed for straight bankruptcy in the past and received a discharge in that case. As the objecting creditor stated, the debtors anticipate spending in the next three years fourteen thousand four hundred dollars ($14,400.00) on food, one thousand four hundred forty dollars ($1,440.00) on newspapers, periodicals and books and two thousand one hundred sixty ($2,160.00) on recreation while paying three hundred dollars ($300.00) under a one year plan in full satisfaction of debts which exceed twenty thousand dollars ($20,000.00). Although the debtors have not invoked the super discharge provisions, and in fact propose full payment of an otherwise dischargeable debt, the sum total of the other pertinent factors leads to the conclusion that the debtors' proposal does not survive the reasonable effort test and good faith scrutiny.

Since an order will be entered denying confirmation of the plan on this ground, the Court need not address the issue of whether the separate classification and proposed payment in full of the education loan is fatally discriminatory under Section 1322(a)(3).